```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/26/07
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
STEVEN DOMENIKOS,                              :
GEORGE DOMENIKOS, ROBIN HURD and               :
SASHA EPSTEIN,                                 :
:                       OPINION and ORDER
                         Plaintiffs,           :                       05-CV-2080
:
        vs.                                    :
:
JOHN ANDREW ROTH,                              :
CLARENCE CHANDRAN, FRANK DUNN                  :
and NORTEL NETWORKS CORPORATION,               :
:
                         Defendants.           :
------------------------------------------------------------x

OWEN, DISTRICT JUDGE:

Plaintiffs brought this action seeking damages for alleged: (i) violations of 10(b) of the Exchange Act and Rule 10b-5 of the Securities and Exchange Commission; (ii) violations of 20(a) of the Exchange Act; (iii) breach of contract or alternatively breach of warranty; (iv) deceptive and unfair trade practices in trade or commerce; (v) deceptive and unfair trade practices in consumer transactions; (vi) issuing materially false and misleading statements in violation of Massachusetts General Laws chapter 110A, § 101; and (vii) common law fraud. Plaintiffs voluntarily dismissed the breach of contract claim (iii) and deceptive and unfair trade practices in trade or commerce (iv). Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6). Defendants' motion is granted.

On a motion to dismiss for failure to state a claim, the complaint must be viewed and construed in the light most favorable to the plaintiff, accepting the complaint's factual allegations as true. Connolly v. McCall, 254 F.3d 36, 40 (2d Cir. 2001). This motion to dismiss concerns the statute of limitations, and courts "can, as a matter of law, determine whether an investor of

1

ordinary intelligence would be on inquiry notice in the circumstances described in the complaint." De La Fuente v. DCI Telecommunications, Inc., 206 F.R.D. 369, 381 (S.D.N.Y. 2002) (citing Dodds v. Cigna Secs., Inc., 12 F.3d 346, 350 (2d Cir. 1993)).

Plaintiffs are former employees of EPiCON, a private software company that provided a software platform called ALTiS. Defendants are Nortel Networks Corporation ("Nortel") which is a global supplier of wireless and wireline networking solutions and services, and Nortel's C.E.O. John Andrew Roth, C.O.O. Clarence Chandran, and C.F.O. Frank Dunn. Nortel and EPiCON executed a Merger Agreement on June 13, 2000. Plaintiffs allege that they relied on the defendants' representations of Nortel's financial health in 1999 and 2000 in signing the agreement. The Merger Agreement provided that on September 5, 2000, all outstanding shares of EPiCON common stock would be converted into common shares of Nortel. Plaintiffs owned varying amounts of EPiCON common stock that was converted into Nortel stock on that day. Its price on September 5, 2000 was approximately $80 per share, and plaintiffs' shares of Nortel were worth over $100 million.

On February 15, 2001, Nortel publicly announced that because of the severe downturn in the economy, it would not grow as robustly as previously projected. The unexpected announcement was widely reported in the media, and within days, class action suits began to accrue, all alleging that Nortel's prior public statements concerning year-2000 and year-2001 forecasts constituted securities fraud. The class action suits were consolidated, with the class period being between October 24, 2000 (the date Nortel announced its third quarter financial results), and February 14, 2001 (the day before the announcement). On February 15, 2001, Nortel's stock was trading at approximately $29.75; the day after the announcement, Nortel's stock plunged 34% to trade as low as $19.00 per share on February 16, 2001.

On April 28, 2004, Nortel announced that C.E.O. Dunn had been discharged for cause, and that its Audit Committee determined that Nortel would need to restate financial results reported in 2003, as well as periods in 2001 and 2002. On November 11, 2004, Nortel issued another press release, stating that its financial reports for 1999 and 2000 were incorrect; the trading price of Nortel stock on that date was approximately $3 per share. On January 11, 2005, Nortel filed a restated Form 10-Contract for the year ending December 31, 2003, in which it stated that "[p]reviously reported financial information for 2000 and 1999 should not be relied upon." On February 14, 2005, plaintiffs commenced this action.

Defendants move to dismiss the complaint, contending that it is barred by the statute of limitations. Defendants correctly state that as of June 13, 2000, the statute of limitations for Rule 10b-5 claims was one year from the date of discovery, or in any event three years from the date of the alleged fraud.[1] See Newman v. Warnaco Group, Inc., 335 F.3d 187, 193 (2d Cir. 2003). The date of discovery is "when the plaintiff obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge." Kahn v. Kohnberg, Kravis, Roberts & Co., 970 F.2d 1030, 1042 (2d Cir. 1992). A plaintiff is charged with the duty to exercise reasonable diligence in determining whether a potential claim exists "[w]hen the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded." LC Capital Partners, LP v. Frontier Ins. Group, Inc., 318 F.2d 148, 154 (2d Cir. 2003). Such circumstances have been affectionately called "storm warnings."

---

[1] Congress passed the Sarbanes-Oxley Act on June 30, 2003. Sarbanes-Oxley, among other things, lengthened the statute of limitations to the lesser of two years from the date of discovery, or five years from the date of the alleged fraud. See 28 U.S.C. § 1658. However, Sarbanes Oxley cannot revive a claim that expired before its passage. See In re Enter. Mortgage Acceptance Co., 391 F.3d 401, 406 (2d Cir. 2004).

3

The issue at hand is whether there were "storm warnings" that put plaintiffs on inquiry notice to cause the statute of limitations to start running. Defendants argue that the steep drop in Nortel's stock price, the media reports following the February 15, 2001 announcement, and the filing of other securities lawsuits constituted sufficient storm warnings and plaintiffs were thus on inquiry notice. A drop in stock price can be a storm warning. The day following Nortel's February 15, 2001 press release lowering projected earnings for upcoming quarters, the stock price plunged 34%, from $29.75 per share to $19.00 per share. Moreover, five months earlier when the plaintiffs acquired their stock on September 5, 2000, the Nortel was trading at $80 per share. The plunge in stock price was one factor that contributed to sufficient storm warnings to place plaintiffs on inquiry notice. See Global Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d 189, 201 (S.D.N.Y. 2003).

Defendants claim that the media's wide reporting of Nortel's February 15, 2001 announcement also put plaintiffs on inquiry notice. The flurry of media attention in the days following the February 15, 2001 announcement alerted plaintiffs to the drop in stock price, but none of the media reports documented in the pleadings suggest any fraud or wrongdoing by Nortel. The defendants cite In re Ultrafem Inc. Sec. Litig., 91 F. Supp. 2d 678, 692 (S.D.N.Y. 2000) and Global Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d at 201, which establish inquiry notice on the basis of very specific articles that report on the fraud at issue in the plaintiffs' suits. Here, the articles referenced in the pleadings do not mention fraud at all, they merely express surprise at the sudden decrease in Nortel's projections and stock price plunge. The media's reporting of the sudden drop in stock price does not refer in any way to fraud in the company, and is thus I conclude is insufficient to put plaintiffs on inquiry notice.

4

However, defendants contend that the law suits filed in response to the February 15, 2001 announcement, which allege the same nature of fraud as the instant case alleges, comprised storm warnings so as to put plaintiffs on inquiry notice. The class action cases were eventually consolidated,[2] with the class period being from October 24, 2000 to February 14, 2001. The defendants claim that the filing of these law suits was sufficient to put plaintiffs on inquiry notice. Plaintiffs claim that because the class action period began in October 24, 2000, "[n]one of the disclosures from early 2001… gave Plaintiffs… any indication that misconduct had occurred prior to the fall of 2000." Reply 11. The class action case allege the same fraudulent conduct plaintiffs allege, only instead of occurring during the period beginning October 24, 2000 in the class action, plaintiffs allege fraud here happened up to September 5, 2000, a mere seven weeks earlier. The similarity of the allegations in the class action case and the proximity of the time periods at issue were, I conclude, enough to put the plaintiffs on inquiry notice in this case.

Plaintiffs rely on the seven week difference in time between the class action case and their own to escape inquiry notice. Plaintiffs' reliance is misplaced. "An investor does not have to have notice of the entire fraud being perpetrated to be on inquiry notice." Dodds, 12 F.3d at 352. Also, "[i]nquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself." In Re Global Crossing at 201 quoting Kennedy v. Josephthal & Co., 814 F.2d 798, 802 (1st Cir. 1987). The class action's allegations of fraud seven weeks after plaintiff's transaction were "circumstances [suggesting] to an investor of ordinary intelligence the probability that she has been defrauded." Dodds, 12 F.2d at 350.

Because plaintiffs made no investigation inquiry once the duty to do so arose, "knowledge will be imputed as of the date the duty arose." See LC Capital Partners, LP 318 F.3d at 154 (quoting Dodds 12 F.3d at 346). Plaintiffs' duty to inquire arose in February 2001, and

---

[2] In re Nortel Networks Corp. Sec. Litig., No. 01 Civ. 1855 (RMB) (S.D.N.Y.)

5

the statute of limitations expired a year later in February of 2002. Their complaint was not filed until February 14, 2005, and is thus three years too late.

Accordingly, defendants' motion to dismiss is granted.

So Ordered.

Dated: New York, New York

January 26, 2006

_____

UNITED STATES DISTRICT JUDGE

6